UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re: ENFORCEMENT OF A RESTRAINING ORDER BY THE NINTH FEDERAL COURT, FIFTH JUDICIAL SUBSECTION IN CAMPINAS, SP, THE FEDERATIVE REPUBLIC OF BRAZIL, TO RESTRAIN: <br><br> AN APPROXIMATELY 836-POUND EMERALD KNOWN AS THE BAHIA EMERALD LOCATED IN LOS ANGELES, CALIFORNIA | 1:15-MC-00783 |



### UNITED STATES OPPOSITION TO MOTION FOR LEAVE TO FILE NOTICE AND REQUEST FOR JUDICIAL NOTICE AND EXHIBITS UNDER SEAL AND TO NOTICE BY KIT MORRISON, TODD ARMSTRONG, JERRY FERRARA, MARKET LINK, INC., AND FM HOLDINGS, INC., REGARDING MATERIAL INFORMATION FROM A PARALLEL PROCEEDING AND MOTION SEEKING JUDICIAL NOTICE

**COMES NOW** the United States of America, by and through its undersigned attorneys, submits this under seal opposition to the "Motion For Leave To File Notice and Request For Judicial Notice And Exhibits Under Seal" (the "Motion") and "Notice By Kit Morrison, Todd Armstrong, Jerry Ferrara, Market Link, Inc., And FM Holdings, Inc., Regarding Material Information From a Parallel Proceeding And Motion Seeking Judicial Notice" (the "Notice") filed on October 28, 2015, by Kit Morrison, Todd Armstrong, Jerry Ferrara, Market Link, Inc., and FM Holdings, Inc. (hereinafter collectively the "Morrison Parties").

The Morrison Parties moved this Court for allowing information from a related sealed proceeding – the depositions taken from Kit Morrison, Todd Armstrong, and Jerry Ferrara – to be filed and used in the instant proceeding. As detailed below, such information is irrelevant to the instant pending enforcement proceeding of a foreign restraining order pursuant to a treaty request. Moreover, the "parallel sealed proceeding" was filed solely for the purpose of collecting

evidence for the use in pending foreign criminal investigations and a prosecution in response to a treaty request, therefore, evidence obtained from the "parallel sealed proceeding" was not created for use in any U.S. proceeding. As such, the Morrison Parties' Motion and Notice should be denied.

## I. FACTUAL BACKGROUND

In the instant proceeding, the United States, acting upon a Mutual Legal Assistance Treaty (the "MLAT") request by the Federative Republic of Brazil, applied to this Court for the registration and enforcement of a restraining order issued by a Brazilian court against a U.S.-based asset, an approximately 836-pound emerald known as the "Bahia Emerald," that is alleged to be involved in criminal conduct in violation of Brazilian law. Docket No. 1. This Court granted a restraining order on June 25, 2015 to effect this request. Docket No. 2. On June 26, 2015, the Morrison Parties, moved to intervene in this matter. Docket No. 3. The United States, on July 13, 2015, filed the response in which the United States did not oppose the Morrison Parties' right to intervene in the instant pending action; however, the United States, citing the legislative history and case law, argued that the Morrison Parties may only raise claims and defenses permitted by 28 U.S.C. § 2467 pursuant to which the restraint was granted and should not be permitted to invoke legal claims that should be litigated abroad. Docket No. 10. The reply by the Morrison Parties was filed on July 20, 2015. Docket No. 11.

A "parallel sealed proceeding" referenced in the Morrison Parties' Notice was a separate, but related, matter filed under seal with the District Court for the District of Columbia to obtain evidence for use in foreign criminal proceedings pursuant to 18 U.S.C. § 3512 two months prior to the initiation of the Section 2467 proceeding before this court. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. In that related

matter, the United States, in response to a separate and independent MLAT request from Brazil, applied to the district court to be appointed commissioner to collect evidence in aid of a criminal investigation and a prosecution being conducted by the Federal Prosecution Service of Brazil. This MLAT request arose from the criminal charges of receiving stolen property, fraudulent misrepresentation, and smuggling, among other charges, against Elson Alves Ribeiro ("RIBEIRO"), Ruy Saraiva Filho ("FILHO"), and the investigation of others who allegedly illegally transported the Bahia Emerald from Brazil into the United States. The MLAT request asked the United States take testimony from a number of individuals including Messrs. Kit Morrison, Todd Armstrong, and Jerry Ferrara regarding their knowledge of the circumstances under which the Bahia Emerald was mined, marketed or sold, transported within Brazil, exported from Brazil, and illegally imported to the United States. Upon the district court's entry of an order for the appointment of a commissioner, the United States issued a notice to Messrs. Morrison, Armstrong and Ferrara to take their testimony so that their statements could be used in the pending Brazilian criminal case. After the United States conferred with counsel for the Morrison Parties, the parties agreed that the counsel from Mayer Brown representing the government of Brazil, on the behalf of the court's appointed commissioner, the United States, would conduct the questioning of the Morrison Parties' individuals in the "depositions" on September 15 and 16, 2015.[1]

---

[1] The order issued by the district court for the appointment of the commissioner provides that the commissioner may, in collecting the evidence requested, be accompanied by persons whose presence or participation is authorized by the commissioner, including, without limitation, special agents of U.S. law enforcement agencies and/or representatives of Brazil, who, as authorized or directed by the commissioner, may direct questions to any witness. Counsel for the United States did not ask any questions of the witnesses intended to illicit testimony to be used in any U.S. proceedings. While the United States may have referred to the statements obtained from the Morrison Parties as "depositions," it does not change the fact that whatever evidence was obtained are statements obtained for use in foreign criminal investigations and proceedings pursuant to 18 U.S.C. 3512 and were not intended to be used as testimony in any adversary U.S. proceeding. Had the United States known of the Morrison Parties intent to subvert the Section 3512 process into a means for submitting "uncontroverted" facts into a related, but separate, Section 2467 proceeding, the United States would have vigorously cross-examined the witnesses on their self-serving statements that they are bone fide purchasers for value.

3

The Morrison Parties claim that Brazil has ignored black-letter law and a U.S. state court ruling that the Morrison Parties are the only "legal" owners of the Bahia Emerald. Docket No. 13.1 p. 2. First, although Brazil attempted to enter in the California state court proceedings by filing a motion to dismiss—an attempt that was strongly opposed by the Morrison Parties—that State court ruled that it would not dismiss the case, but it did not rule on the merits of Brazil's claims. All that California court ultimately decided was that who, between the U.S. parties before that court, had a superior title and interest in the Bahia Emerald, and this did not include any litigation of Brazil's ownership claims under civil law[2] principles because Brazil was not permitted to intervene in that case. The Morrison Parties continually refer to the California Superior Court case but it is important to note that 1) Brazil was not a party in that case; 2) the court did not adjudicate the merits of Brazil's claim since it was not a party, instead the court made clear that it was simply adjudicating the relative rights of the parties before the court; 3) the parties objected to Brazil intervening in the suit so, contrary to the Morrison Parties claims, Brazil did not unilaterally chose not to participate; 4) Brazil only asked the court to dismiss the case, which the court did not do, but Brazil never asked the court to determine Brazil's claim to the Emerald. Thus, the Morrison Parties' claim that "Brazil attempted to intervene in the matter by moving to dismiss" is misleading. Docket No. 13.1, p.4. It is incorrect to say that "The

---

[2] Brazil's ownership rights that could have been litigated in the California case would have arisen under operation of Brazilian civil law as opposed through the operation of criminal law. The Bahia Emerald was illegally mined in Brazil, and because the sovereign owns all minerals in Brazil, Brazil civilly claimed it still owns the Emerald, and any legal title that followed illegal removal from the Brazil's soil was an illegal transfer, invalid and void ab initio. Brazil's alternative ownership theory under Section 2467 is the right to ownership of the Bahia Emerald based upon operation of Brazilian forfeiture law, and not as victim of a theft. The right to own the Bahia Emerald via operation of Brazilian forfeiture law is a conditional property right. If Brazil proves a crime was committed in Brazil and the Bahia Emerald is the proceeds or an instrumentality of that offense, then that item would be subject to forfeiture to Brazil and hence Brazil gains title to the Bahia Emerald that way, because the property is now tainted. The fact that Brazil's civil legal title should be superior to that of the Morrison Parties' interests, an issue that would have been litigated in California had Brazil been able to make that claim, is not the basis for ownership in forfeiture. Contrary to the Morrison Parties claims, at no point did the United States doubt Brazil's right to forfeit the Bahia Emerald or it would not have filed the Section 2467 Application with this Court. *See, e.g.,* Docket No 11, at p. 7. If it is black letter law that the Bahia Emerald cannot be forfeited, then the Morrison Parties should travel to Brazil and have the Brazilian court there lift its restraint order.

4

Superior Court, therefore, rejected Brazil's argument" on chain-of-title, Docket No. 13.1, p. 4., because that court never ruled on the merits of Brazil's ownership claim. Rather, what Brazil has chosen to do is to pursue a criminal remedy in Federal Court, over a civil one in California state court.

Second, the Morrison Parties claim that they are bona fide purchasers is rather self-serving, does not have the benefit of other testimony or evidence yet to be obtained or evidence held by Brazil. Even if this court where inclined to do so, a vigorous examination of the Morrison Parties' testimony for the Brazilian case makes crystal clear that they never even attempted to trace the Emerald's chain-of-title all the way back to its mining and export—rendering their claim that they were bona fide purchasers far-fetched. Truly bona fide purchasers trace title all the way back. Similarly, the Morrison Parties are hard pressed to fancy themselves bona fide purchasers when they paid just $1.3 million for something that their own appraisals said was valued at $384 million. In addition, the statements made by Kit Morrison establishes that all the U.S. parties to the California Superior court proceedings, save one who was dismissed from the case on motion practice, settled with the Morrison Group and those persons now own parts of the Bahia Emerald (once it is sold). This includes persons who were part of the illegal importation of Bahia Emerald into the United States. In other words, the application for a judgment in California was unopposed and agreed to by the various U.S. litigants, as they all own a piece of the Bahia Emerald, making a judgment based upon one party's self-serving filings—the Morrison Parties'—very suspect and likely served only one purpose; to make sure Brazil could not claim civil ownership to the Emerald under U.S. law without expensive appeals and lengthy litigation in California State courts.

## II. ARGUMENT

### A. The Morrison Parties' Claim as a Bona Fide Purchaser Cannot Be Asserted Under Section 2467 (d)(3), Thereby Making Their Requested Filing of the Depositions In the Instant Proceeding – Which Was Intended to Establish The Bona Fide Purchaser Defense — Irrelevant

As stated in the United States' Response to the Motion, *See* Docket No. 10, the instant proceeding is not an independent U.S. forfeiture action where the United States is seeking this Court's adjudication on asserted interests in the subject property, the Bahia Emerald, under U.S. federal law. But instead, this matter presently pending in this Court is ancillary to the Brazilian criminal forfeiture proceedings[3], where the United States is merely enforcing a valid Brazilian restraining order in order to discharge its treaty obligations under the MLAT. As an ancillary enforcement matter, Congress has thus provided limited grounds upon which a person with a protected property interest in the subject property may challenge a Section 2467 enforcement action that the United States files on behalf of a foreign treaty partner.

In support of the United States' position that the Morrison Parties' claim as a bona fide purchaser is not a permissible grounds under Section 2467(d)(3) for challenging the instant ancillary proceeding, the United States, in this opposition, is reciting the relevant legislative history, which was previously stated in the United States' Response to the Motion to Intervene,

---

[3] Unlike what the Morrison Parties stated, Brazil "intends to someday in the future seek its forfeiture", *see* Docket No. 13.1 at p. 9, the pending criminal proceedings in Brazil is in fact an action where Brazil is *presently* seeking forfeiture of the Bahia Emerald. For this reason, upon this Court's June 24 restraining order, the United States provided notice to the Morrison Parties and other parties who may have an interest in the Bahia Emerald, of this Court's restraining order as well as the Brazilian Official Notice. The Brazilian Official Notice advises all the interested parties including the Morrison Parties of their rights to challenge forfeiture in the pending Brazilian case. The Morrison Parties have yet to take advantage of this opportunity. In addition, the Morrison Parties stated that "[i]t is indisputable that the Government of Brazil had to present the claim that it is now making before the Superior Court, but the Government of Brazil chose not do to that." *See* Docket No. 13.1, p. 9 fn 9. This is incorrect. The claim presented in the instant case arose from Brazilian interest in criminal proceeds – the Bahia Emerald – subject to forfeiture in the pending criminal case. A claim of ownership premised on the operation of forfeiture law could not have been raised in the California Superior Court. *See United States v. The Federative Republic of Brazil, et al.*, 748 F. 3d 86, 97 (2d. Cir. 2014).

6

*See* Docket No. 10. Section 2467(d)(3)(C) clearly prevents any party with a protected property interest from challenging the forfeitability of property under foreign law in the ancillary U.S. proceeding. Section 2467(d)(3)(C) states as follows:

> **(C) Limit on grounds for objection.**— No person may object to a restraining order under subparagraph (A) on any ground that is *the subject of parallel litigation involving the same property that is pending in a foreign court.* 28 U.S.C. § 2467(d)(3)(C)(emphasis added).

The legislative history of Section 2467 makes the intent and purpose of this provision abundantly clear, namely, that any party seeking to challenge a U.S. Section 2467 restraint based upon issues that could have been and should be raised in foreign forfeiture proceedings must first appear in the foreign action and do so there. *See* H.R. Report No. 107-250(I), at Sec. 118, Section by Section Analysis of the Legislation. The Congressional intent behind adding this provision is as follows:

> Specifically, a Federal court could issue a restraining order under 18 U.S.C. S 983(j) or register and enforce a foreign restraining order, if the Attorney General certified that such foreign order was obtained in accordance with the principles of due process. A person seeking to contest the restraining order could do so on the ground that 28 U.S.C. S 2467 was not properly applied to the particular case, but could not oppose the restraining order on any ground that could also be raised in the proceedings pending in a foreign court. This provision prevents a litigant from taking "two bites at the apple" by raising objections to the basis for the forfeiture in the Federal court that he also raised, or is entitled to raise, in the foreign court where the forfeiture action is pending. It complements the existing provision in section 2467(e) providing that the Federal court is bound by the findings of fact of the foreign court, and may not look behind such findings in determining whether to enter an order enforcing a foreign forfeiture judgment. *Id.*

As also indicated in the United States' Response to the Motion to Intervene, the sufficiency of evidence to establish whether the Bahia Emerald is subject to forfeiture in Brazil or the issue of whether the Morrison Parties qualify as bona fide purchasers for value under Brazilian law are factual and legal issues that should not be reviewed by this Court. *See* §2467(d)(3)(C); Docket No. 10. In the Notice the Morrison Parties spilled a massive amount of ink on its asserted claim that they are bona fide good faith purchasers of the Bahia Emerald. *See*

Notice at 8-12. In particular, the Morrison Parties set forth the timeline surrounding the Bahia Emerald's excavation, shipment, exportation, importation and the related buy and sale transactions, in an effort to demonstrate their good faith and due diligence when they acquired the Bahia Emerald. *Id.* at 10-11. Despite the fact that the Morrison Parties lack firsthand knowledge in regards to the alleged facts that constitute events in the timeline, these facts should only be presented in the criminal forfeiture proceeding currently pending in the Brazilian court, with the application of Brazilian law to determine whether the Morrison Parties meet the bona fide good faith purchasers elements under Brazilian law. As stated in the United States' Application to Register and Enforce Foreign Orders, *see* Docket No. 1, Brazilian law provides due process protections for good faith third-parties who might be impacted by the restraint. *Id.* at 11-12. The May 14, 2015 Brazilian restraining order, which this Court enforced and registered, provided that any third-party may petition the court for the dissolution of the May 14, 2015 restraining order pursuant to the Brazilian Code of Criminal Procedure, which permits a third-party good-faith purchaser to assert that they have a superior claim and title to the Bahia Emerald. Since a third-party is free to assert any claim that may be available under Brazilian law, the Morrison Parties' bona fide purchaser claim should be filed in the Brazilian court, rather than this Court's instant enforcement action. *See United States v. Gang Luan*, 722 F.3d 388, 399 (D.C. Cir. 2013) ("if the Hong Kong restraining order is discharged, the U.S. restraining order must be discharged as well . . . . Luan has already been given the opportunity to challenge his restraint in an adversarial hearing [in Hong Kong] . . . . [T]he Hong Kong Court of First Instance notified Luan that he could request a hearing in which to argue that the restraining order against him should be discharged.)

Therefore, the Morrison Parties' bona fide purchaser claim is inconsistent with the available grounds upon which to challenge the instant enforcement action, *see* 28 U.S.C. § 2467

8

(d)(3)(A)(ii)(I), and cannot be considered by this Court. As the proposed filing of the depositions of Kid Morrison, Todd Armstrong and Jerry Ferrara will establish that "the Morrison Parties purchased the Emerald in good faith, without any knowledge as to purported illegality associated with its original or importation", *See* Notice at 11, the recorded statements are irrelevant to this enforcement proceeding, and were gathered for use in a foreign criminal investigation and proceedings, and should not be used or disclosed in this proceeding. The Morrison Parties' Motion should be denied.

B. <u>The Related Sealed Commissioner Proceeding</u>

Federal courts, pursuant to the Treaty, statutory authority, and their inherent authority, may issue orders as necessary to ensure the production of evidence requested by a treaty partner, such as Brazil, including orders appointing a person as a commissioner to gather such evidence and establishing procedures for the production of such evidence. *See* 18 U.S.C. § 3512; *In re Request from United Kingdom Pursuant to Treaty Between Government of US and Government of United Kingdom on Mutual Assistance in Criminal Matters in the Matter of Dolours Price*, 685 F.3d 1, 9 (1st Cir. 2012) ("The United States has entered into a number of [MLATs] which typically provide for bilateral, mutual assistance in the gathering of legal evidence for use by the requesting state in criminal investigations and proceedings."). In executing a separate MLAT request from Brazil for collecting evidence to assist a pending Brazilian criminal case where two Brazilian nationals, Ribeiro and Filho, who are being prosecuted for offenses of which their conviction will result in the forfeiture of the Bahia Emerald, the United States filed under seal a commissioner application requesting the court to appoint a commissioner on behalf of the government of Brazil to gather the requested evidence for that prosecution and related investigations of other persons who may be accessories in these Brazilian offenses.

███████████████████████████████████████████████. (the "Commissioner Proceeding"). Although the parallel commissioner proceeding is related the Bahia Emerald, this proceeding is completely independent from the instant enforcement action.

It is very common that commissioner proceedings are filed under seal with the district court because of an ongoing criminal investigation by foreign relevant authorities in cooperation with the United States Department of Justice. If such information were made public at this time, it may compromise the ongoing investigation and undermine the development of evidence by alerting persons suspected of engaging in criminal conduct of the law enforcement activity and of information known to law enforcement. In addition, most if not all MLAT requests contain a provision requesting confidentiality in processing the request for collecting evidence, as is the case in the Brazilian MLAT request for evidence in the Bahia Emerald investigation. *See United States v. Trustees of Boston College*, 831 F. Supp. 2d 435 (D. Mass. 2011), *aff'd in part, rev'd in part, In re Request from the United Kingdom Pursuant to the Treaty between the Government of the US and the Government of the United Kingdom*, 718 F.3d 13 (1st Cir. 2013) ("Another important requirement of MLAT requests is confidentiality." *Id.* at 450", citing UK–MLAT art. 7, Confidentiality and Limitations on Use; UK–MLAT Technical Analysis, S. Exec. Rep. No. 104–23, at 19 ("The United Kingdom delegation expressed particular concern that information it supplies in response to United States requests receive the same kind of confidentiality accorded exchanges of information via diplomatic channels, and not be disclosed under the Freedom of Information Act.")).

Under the Treaty and the statutory provisions of Title 18 U.S. Code Section 3512, a Department of Justice attorney appointed by the court is empowered to issue subpoenas, "requiring the appearance of a person, or the production of documents or other things, or both."

18 U.S.C. § 3512(a)(2)(D). Thus, upon the entry of the court order, the commissioner may use the form entitled "Commissioner's Subpoena" to obtain the requested evidence and information. *See In re Commissioner's Subpoenas*, 325 F.3d 1287, 1291 (incorporating in pertinent part a district court's order directing use of commissioner's subpoenas); *In re Erato*, 2 F.3d 11, 13-14 (2d Cir 1993) (same). This commissioner's subpoena is simply a version of the "order" to be issued by the person appointed by the court under section 3512, directing the production of evidence. Section 3512 expressly authorizes the service and enforcement of such orders or commissioner's subpoenas, anywhere in the United States (i.e., coextensive with the service of subpoenas in U.S. criminal investigations and prosecutions). Since documents, testimony or statements in response to commissioner subpoenas or commissioner deposition notice are produced for the use as evidence in a foreign criminal proceeding, items produced by relevant individuals or an entity are not filed with the district court as routine commissioner practice. Upon receiving the requested documents from subpoena recipients, or the requested testimony from deponents, the court's appointed commissioner will submit them to the United States Central Authority for the purpose of a MLAT request, the Department of Justice's Office of International Affairs, which in turn will forward production to the foreign government via an appropriate MLAT channel. As such, the Morrison Parties' "depositions" are not filed with the district court; rather, they have been transmitted to the government of Brazil through the MLAT mechanism.

While the United States took the position that the Morrison Parties' "depositions" are irrelevant to the instant restraint proceeding and filing the produced responses with the U.S. court appears to contradict the purpose of the commissioner proceeding in which evidence collected is intended to be used in the foreign court; nevertheless, the United States, in accommodating the Morrison Parties' request to introduce the depositions into the instant action, proposed that the

11

Morrison Parties may file affidavits in which to restate the contents contained in the depositions. This proposal was rejected by the Morrison Parties after the United States pointed out that the proposed statement summaries were not based upon firsthand witness knowledge and conflated conclusions of fact and law not supported by any evidence other than a self-serving summary prepared by counsel and introduced as an exhibit to Kit Morrison's deposition.

### III. CONCLUSION

For the reason stated above, the United States requests this Court deny the Morrison Parties' "Motion for Leave to File Notice and Request for Judicial Notice and Exhibits under Seal" as well as "Notice by Kit Morrison, Todd Armstrong, Jerry Ferrara, Market Link, Inc., and FM Holdings, Inc., Regarding Material Information from a Parallel Proceeding and Motion Seeking Judicial Notice".

M. KENDALL DAY, Chief
Asset Forfeiture and Money Laundering Section
Criminal Division
United States Department of Justice

By: _____/s/_____
A.J. DE KLUIVER
Assistant Deputy Chief
jack.dekluiver@usdoj.gov
JENNIFER WALLIS
Trial Attorney
jennifer.wallis@usdoj.gov
U.S. Department of Justice
Criminal Division
Asset Forfeiture and Money Laundering Section
1400 New York Avenue, N.W., 10100
Washington, D.C. 20530
Telephone: (202) 514-1263

Attorneys for Applicant
UNITED STATES OF AMERICA