IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re: ENFORCEMENT OF A RESTRAINING ORDER BY THE NINTH FEDERAL COURT, FIFTH JUDICIAL SUBSECTION IN CAMPINAS, SP, THE FEDERATIVE REPUBLIC OF BRAZIL, TO RESTRAIN: <br><br> AN APPROXIMATELY 836-POUND EMERALD KNOWN AS THE BAHIA EMERALD LOCATED IN LOS ANGELES, CALIFORNIA | Case: 1:15-mc-00783 |

UNDER SEAL

REPLY BY KIT MORRISON, TODD ARMSTRONG, JERRY FERRARA, MARKET LINK, INC., AND FM HOLDINGS, INC. IN SUPPORT OF NOTICE REGARDING MATERIAL INFORMATION FROM A PARALLEL PROCEEDING AND MOTION SEEKING JUDICIAL NOTICE

In the flurry of the U.S. Government's[1] legal and factual arguments, it is easy to lose sight of the only two questions currently before this Court:

1. Motion to Reconsider. Whether Kit Morrison, Todd Armstrong, Jerry Ferrara, Market Link, Inc., and FM Holdings, Inc. ("Morrison Parties") should have an opportunity to present substantive arguments demonstrating why this Court's Restraining Order, which the U.S. Government filed *ex parte*, requires reconsideration (the U.S. Government notably *agrees* with the Morrison Parties that this Court should grant the request to be heard); and

---

[1] In this Motion we, for simplicity sake, will refer to the "U.S. Government" as shorthand for "the U.S. Government, acting on the Government of Brazil's behalf."

2. <u>Consideration of Deposition Transcripts.</u> Whether this Court should, in the context of the Morrison Parties' above-mentioned Motion to Reconsider, consider the transcripts of recent depositions taken by the Government of Brazil and the U.S. Government of the Morrison Parties concerning the outcome-determinative issues at play here (the U.S. Government, on behalf of the Government of Brazil, asks this Court to blind itself from this central information).

The present motion, when stripped of the background noise, simply concerns whether this Court should accept the U.S. Government's invitation to refuse to consider material information relevant to this proceeding. The U.S. Government favors an incomplete record; it spends twelve pages arguing that the deposition transcripts at issue, which were taken (1) by the parties in this matter and (2) directly address the underlying facts at issue in this matter, are so irrelevant that they should not even be *seen* by this Court. This counter-factual position should not stand. The Morrison Parties respectfully submit that this Court should review and consider the deposition transcripts.

## I.   ARGUMENT

### A.   The Deposition Transcripts Are Central to This Proceeding

The statutory basis for Brazil's attempted seizure of the Bahia Emerald in the above-captioned matter is 28 U.S.C. § 2467(d)(3), which explicitly incorporates principles of due process. *See* 28 U.S.C. § 2467(d)(1)(A) (permitting courts to reject foreign orders upon a finding that "judgment was rendered under a system that provides tribunals or procedures incompatible with the requirements of due process of law"); *see also* 18 U.S.C. § 983j (due process protections explicitly incorporated into § 2467(d)(3) proceedings). These are precisely the grounds rendering Brazil's attempt at an end-run around the prior adverse ruling so improper. As explained in more detail in the Morrison Parties' earlier filing, the Government of Brazil sought

to intervene in the California civil litigation *ex parte*. *See* Exh. A. When the court denied that motion and ordered Brazil to file "a noticed motion," Brazil *unilaterally chose* not to do so, electing instead to file a "Request To Appear Specially To Submit Demurrer, Or In The Alternative, Stay Proceedings," seeking an indefinite stay. The court once again denied Brazil's motion, noting that it was "not supported by admissible evidence" and that Brazil had "known about these proceedings since 2009; but until the last few months [the court's statement was made in 2015], Brazil has done nothing whatsoever to assert its interests in this proceeding or even give us the courtesy of notice of its position." Exh. B., at 32, 33.

After its repeated legal defeats in the civil proceedings, Brazil brought criminal proceedings in its own courts against the men suspected of smuggling the Bahia Emerald out of Brazil. In a move that is as creative as it is transparent, the Government of Brazil now claims the Emerald is "forfeitable" from bona fide purchasers who did not even *hear* of the Emerald until years *after* it had left Brazil—a theory that runs contrary to Brazil's own forfeiture laws. As the Morrison Parties have noted, Brazilian law, like U.S. law, protects bona fide good-faith purchasers from forfeiture. *See* Exh. C.

Despite these questionable tactics, the U.S. Government's continues to press the position that the Morrison Parties should take up their grievance about Brazil's self-described "National Treasure" in Brazil's own courts. Considering the highly political nature of this controversy, the Morrison Parties' status as American citizens, and Brazil's maneuvering to date, there are sound reasons for believing that the Morrison Parties will not receive anything approaching a fair hearing.

But that is an issue this Court needn't resolve, for a the Morrison Parties' appearance in a Brazilian court is simply not required (and moving the Emerald from the U.S. to Brazil is not

appropriate). The Government notes that § 2467(d)(3)(C) prohibits arguments that are "the subject of parallel litigation involving the same property that is pending in a foreign court." Dkt. No. 15, at 7. *See* Dkt. No. 15, at 7. But the Morrison Parties are in no way involved in the "parallel" Brazilian prosecution. Indeed, the Morrison Parties take *no position at all* as to whether the Bahia Emerald was illegally mined and exported in 2001. Nor can they. At the time they purchased the Emerald in 2008, the Morrison Parties conducted substantial due diligence (which, not surprisingly, is discussed at great length in the very depositions the U.S. Government does not want this Court to consider). The Morrison Parties for good reasons understood there to be a good chain of title (as the California court found after a trial on this issue - again, a topic that featuring prominently in the deposition transcripts).

Brazil, for its part, did not make any public accusations of illegality until 2014, and no amount of due diligence would have made the Morrison Parties clairvoyant with regard to that claim (once again a central topic during the depositions the U.S. Government characterizes as "irrelevant"). Thus, whether the Brazilian men responsible for mining and exporting the Emerald are at some point in the future convicted has absolutely no legal impact on the Morrison Parties' present rights to the Emerald.

The U.S. Government also claims this Court should be content with simply reading affidavits provided by the Morrison Parties, rather than reviewing the sworn testimony taken by the very parties pushing the current legal agenda, namely, the Government of Brazil and the U.S. Government. Dkt. No. 15, at 12. If the "affidavit-only approach" were superior to reviewing sworn testimony, there would be little reason for depositions or trials. As Justice Stevens rightly commented, "[e]ven if one does not completely agree with Wigmore's assertion that cross examination is 'beyond any doubt the greatest legal engine ever invented for the discovery of

truth,' one must admit that in the Anglo American legal system cross examination is the principal means of undermining the credibility of a witness whose testimony is false or inaccurate."[2]

Stated simply, this Court will benefit more from reviewing spontaneous, sworn answers to questions posed in an adversarial setting than by simply reading a cold, crafted document. There is simply no reasoned argument for why this Court should be prevented from reviewing the most reliable source for answers to the central factual questions pending before it.

### B. There Is No Rationale for Keeping the Deposition Transcripts Secret

The U.S. Government makes a half-hearted attempt to argue for the continued secrecy of the parallel under-seal proceeding by noting that, as a general matter, MLAT proceedings are often secret. "If such information were made public at this time, it may compromise the ongoing investigation and undermine the development of evidence by alerting persons suspected of engaging in criminal conduct of the law enforcement activity and of information known to law enforcement." Dkt. No. 15, at 10.

███████████████████████████████████████

███████████████████████████████████

██████████████████████████ ██ ██

███████████████████████████████

████████████

█ ██████████████████████████████

███

█ ███████████████████

---

[2] *United States v. Salerno*, 505 U.S. 317 (Stevens, J., dissenting).

■ ██████████████████████████████

████████████████████████████████████████

████████████████████  ████████████████████

██████████████████

In addition, the U.S. Government avoids any attempt to develop its "could compromise a pending investigation" argument in the context of *this* specific case, where there is absolutely no justification for continued secrecy. The Brazilian prosecution is already very publicly underway, and there have been numerous news reports about the litigation in this country as well.[3] Thus, any "persons suspected of engaging in criminal conduct" related to this matter are already well aware of law enforcement's activity. The U.S. Government, moreover, failed to raise any objection to the Morrison Parties or their attorneys obtaining transcripts of the proceedings. Indeed, if the U.S. Government believes this information must be kept secret lest a foreign investigation be compromised, there is nothing stopping it from asking the Court to modify the Order to Seal to cover the depositions.[4]

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████

C.   **The Morrison Parties Are Good-Faith Purchasers**

---

[3] *See, e.g.*, Stephen Ceasar, "Federal Judge Halts Release of Massive Brazilian Emerald," L.A. TIMES (June 25, 2015) ("[In Brazil,] prosecutors in an upcoming criminal trial allege that two men knowingly received the stolen emerald and illegally smuggled it out of the country. . . . Brazil's Los Angeles-based lawyer, John Nadolenco, said the Brazilian officials have been working with the federal government to secure its return. 'The Bahia Emerald was illegally mined and unlawfully exported from Brazil,' he said.").
[4] Suffice it to say that the Morrison Parties would object to any such unjustifiable request.

The U.S. Government, apparently recognizing that a dispositive ruling by a U.S. court does not advance their position, in what can best characterized as an aside also attempts to undercut the legal effect of the California court's decision. In particular, the U.S. Government says that the California court "did not rule on the merits of Brazil's claims." Dkt. No. 15, at 4. This assertion is false and misleading for two central reasons.

<u>Brazil was a litigant/party in the California Proceedings</u>. First, to the extent Brazil was not a "*party*" to the California case, that was a strategic litigation decision the Brazilian Government chose to make. After all, Brazil submitted an *ex parte* motion to intervene, which the California court denied. *See* Exh. A. The court held that Brazil failed to meet the standard for *ex parte* relief, and instructed Brazil to file a regularly noticed motion. *Id.* Brazil unilaterally refused to do so, and subsequently lost its attempt to have the case dismissed.[5] Finally, Brazil chose not to appeal any of these rulings. Brazil, plain and simple, was an unsuccessful litigant/party in the California proceedings.

<u>The California Proceedings Determined Ownership of the Emerald</u>. Second, the U.S. Government fails to acknowledge that the California action was not merely a suit between parties, but rather "an in rem proceeding to determine ownership of the Bahia Emerald." *See* Exh. D (Tentative Decision & Statement of Decision Following Trial of Claim by the Morrison Parties (Sup. Ct. Cal. May 28, 2015). Under California Code of Civil Procedure Section 764.010, however, no person is allowed to quiet title by "default," and any person seeking to quiet title must therefore adduce sufficient evidence to convince the court that he or she has acquired title. *Even in the absence of another party* (which, as discussed below, was not the case here), a party must put still forward sufficient evidence to convince the judge that the party has

---

[5] Brazil filed a "Request To Appear Specially To Submit Demurrer, Or In The Alternative, Stay Proceedings" claiming sovereign immunity.

acquired title. In other words, the action was not—as the U.S. Government wishes it were—to show merely that the Morrison Parties had superior ownership claims to the opposing party, but rather to show that the Morrison Parties were the rightful and legal owners of the Bahia Emerald.

<u>The Morrison Parties Prevailed Following a Trial on the Merits</u>. The U.S. Government is also flatly wrong in its assertion that "the application for a judgment in California was unopposed and agreed to by the various U.S. litigants, as they all own a piece of the Bahia Emerald, making a judgment based upon one party's self-serving filings—the Morrison Parties'—very suspect." Dkt. No. 15, at 5. In fact, the Morrison Parties participated in *two trials* in which Anthony Thomas actively opposed their ownership claim. The first ended in a mistrial when the presiding judge was appointed to the U.S. District Court before his decision was finalized. The second trial was conducted over approximately *thirty days* with multiple witnesses. Because the action was *in rem*, the Court itself had the authority to cross-examine witnesses, and in fact did so. Although Brazil also had the authority to cross-examine witnesses, *see Nickell v. Matlock* 206 Cal.App.4th 934 (2012); *Harbour Vista, LLC v. HSBC Mortg. Services, Inc.*, 201 Cal, App.14th 1496 (2011), and although Brazil actually had its own counsel in court watching the trial, Brazil again *chose not to participate*.

<u>The Morrison Parties Performed Ample Due Diligence</u>. Finally, the U.S. Government asserts—without citation to authority or even developed argumentation—that "[t]ruly bona fide purchasers trace title all the way back." Dkt. No. 15, at 5. The Morrison Parties are baffled by this claim, because there is no uniform title search standard for gems. Put simply, buying a gem on the open market is not like buying a parcel of land. Unlike real property, which is heavily regulated, cannot be moved, and for which title insurance is often required, establishing title to gemstones is far less simple. It is often virtually impossible for a buyer to trace a stone's title

back to its mining—whether it is the Morrison Parties or a consumer who buys a wedding ring at a retail jewelry shop. What is more, the considerable due diligence by the Morrison Parties (which the U.S. Government in their briefing claims is somehow "insufficient") is laid out in chapter and verse in the deposition transcripts the U.S. Government incoherently claims are "irrelevant."

Regardless, the California court that actually heard evidence on this issue made clear and explicit findings:

> Morrison paid $1.3 million to acquire an interest in the Bahia Emerald. Before doing so, he received chain of title records from Ferrara; Morrison, Armstrong and Dean all reviewed the records and conducted independent research; Armstrong interviewed [attorney] Eric Kitchen, who was continually involved with the emerald and vouched for its clear title; and all of the relevant participants—Morrison, Armstrong, and Ferrara— held a good faith belief that they had sound title to the Bahia Emerald." Exh. D., at 13.

Thus, the *only* court in the United States to have assessed the Morrison Parties' due diligence efforts found that the Morrison Parties' efforts in this regard were more than sufficient to establish that the Morrison Parties held a well-founded belief in the Emerald's "sound title."[6]

## II. CONCLUSION

For the foregoing reasons, the Morrison Parties respectfully request that this Court grant the narrow motions currently before it, which are:

(1) allow the Morrison Parties to intervene; and

(2) take judicial notice of the Morrison Parties' deposition transcripts in the parallel under-seal proceeding ▮▮▮▮▮▮▮▮▮▮

---

[6] Indeed, in 2008 when the Morrison Parties were conducting their due diligence, there was absolutely no reason or suspicion that would have prompted the Morrison Parties to conduct further due diligence. The Emerald appeared to have clear title extending through several owners in the United States, and had even been publicly placed for sale on eBay the year before, something the Morrison Parties in good faith believed would never have happened if there had been any skepticism regarding its legality. Nor did Brazil publicly question how the Emerald was mined and exported until six years later, in 2014. In short, the government is trying to hold the Morrison Parties to an impossible level of due diligence not required by law or market practice.

DATED: November 23, 2015                    Respectfully submitted,

                                                    By: */s/ Barak Cohen*
                                                       Barak Cohen, Bar No. 485945
                                                       BCohen@perkinscoie.com
                                                       700 Thirteenth Street, N.W.,
                                                       Suite 600
                                                       Washington, D.C. 20005-3960
                                                       Telephone: 202.654.6337
                                                       Facsimile: 202.654.6211

                                                       T. Markus Funk, Bar No. 1004922
                                                       (pro hac vice admission pending)

                                                       Andrew J. Spielberger
                                                       (pro hac vice admission pending)

                                                       Attorneys for the Morrison Parties

**CERTIFICATE OF SERVICE**

I hereby certify on this 23rd day of November, 2015, the foregoing Reply and all exhibits attached thereto was sent via email to the following:

Mary K. Butler
U.S. DEPARTMENT OF JUSTICE
1400 New York Avenue, NW
Washington, DC 20005
(202) 616-7529
Fax: (202) 514-3003
Email: Mary.K.Butler@usdoj.gov

Addy Jacob deKluiver
U.S. DEPARTMENT OF JUSTICE
1400 New York Avenue, NW
Room 10100
Washington, DC 20530
(202) 514-2324
Email: jack.dekluiver@usdoj.gov

Jennifer W. Wallis
U.S. DEPARTMENT OF JUSTICE
1400 New York Avenue, NW
10th Floor
Washington, DC 20530
(202) 514-1263
Email: jennifer.wallis@usdoj.gov

*Attorneys for Interested Party*
*United States of America*

/s/
_____
Barak Cohen