IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re: ENFORCEMENT OF A RESTRAINING ORDER BY THE NINTH FEDERAL COURT, FIFTH JUDICIAL SUBSECTION IN CAMPINAS, SP, THE FEDERATIVE REPUBLIC OF BRAZIL, TO RESTRAIN: <br><br> AN APPROXIMATELY 836-POUND EMERALD KNOWN AS THE BAHIA EMERALD LOCATED IN LOS ANGELES, CALIFORNIA | Case No.: 1:15-mc-00783-RBW |

**INTERVENORS' OPPOSITION TO UNITED STATES' APPLICATION TO ENFORCE A FOREIGN FORFEITURE JUDGMENT PURSUANT TO 28 U.S.C. § 2467(c)(1) AND (d)(1) AGAINST BAHIA EMERALD**

Intervenors Kit Morrison, Todd Armstrong, Jerry Ferrara, Market Link, Inc., and FM Holdings, Inc., by and through undersigned counsel, hereby oppose the United States' application to register and enforce a Brazilian Court's Forfeiture Judgment pursuant to 28 U.S.C. § 2467(c)(1) and (d)(1) against an approximately 836-pound emerald, known as the "Bahia Emerald," that is currently in the custody of the Los Angeles County Sheriff's Department (the "Application"). For at least three reasons, the Court should continue to stay this action and deny the Application.

*First*, the United States has not moved to lift the stay of these proceedings, and, in any event, good cause does not exist to lift the stay.

*Second*, the United States has consistently taken the position that these proceedings should remain stayed pending the outcome of settlement discussions between Intervenors and the Government of Brazil. Because settlement discussions are still ongoing, by the United States' own logic, this action should remain stayed.

*Third*, the Application should be denied on the merits because, under Article 14 of the Brazil-U.S. Mutual Legal Assistance Treaty ("MLAT"), the United States "may require that

the Requesting State [Brazil] agree to the terms and conditions deemed to be necessary to protect third party interests in the item to be transferred." Treaty with Brazil on Mutual Legal Assistance in Criminal Matters art. 14, Apr. 28, 1998, Treaty Doc. No. 105-42. Here, the California Superior Court has issued a final judgment awarding legal and equitable title in the Bahia Emerald to Intervenors. (Doc. No. 4-1.) By simply returning the gem to Brazil with no "terms and conditions" attached, as the United States seeks to do in contravention of the California judgment, the United States has abdicated its responsibility to "protect third party interests in the item to be transferred."

For these reasons, the Court should continue to stay this action and deny the Application.

## BACKGROUND

On June 23, 2015, the Superior Court for the State of California, following an extended civil dispute and trial, awarded the Bahia Emerald to Intervenors. (*Id.*) Among other things, the California Court ruled that Intervenors were "bona fide good faith purchasers [who] acquired legal title to the Bahia Emerald through a series of valid agency agreements," and that "FM Holdings, Inc. has legal and equitable title to the Bahia Emerald." (*Id.* at 2.) There has been no appeal from that decision and the appellate deadline has now expired.

The Government of Brazil aims effectively to invalidate the California Superior Court's ruling by invoking the mandatory language of the MLAT. The U.S. Department of Justice, acting at the Government of Brazil's direction, contends that, because certain Brazilian defendants—who many years ago were involved with the Emerald—were criminally convicted in Brazil, and because a Brazilian court has ordered forfeiture of the Bahia Emerald in connection with such convictions, the Emerald should become subject to forfeiture for purposes of MLAT. Critically, the Government of Brazil does not allege, and there is

absolutely no evidence, that Intervenors were involved in any way in the illegal mining or exportation of the gem.

On September 15, 2017, the Intervenors and the United States filed a Joint Motion to Stay this action, agreeing that:

> Over the past year, *the Intervenors and the Brazilian government have been discussing a mutually amicable disposition of the Bahia Emerald*, but have not reached any final settlement. . . .  Given these actions outside of this litigation, both the Intervenors and the United States agree in principle that the status of the Bahia Emerald should not change; the Court's restraining order should remain in place, and the Bahia Emerald should remain in the custody of the Los Angeles County Sheriff's Department.

(Doc. No. 40, at 2) (emphasis added).)

On September 26, 2017, the Court granted the parties' Joint Motion to Stay and directed the parties "to submit a joint status report every 120 days to inform the court of the progress of the related proceedings."  Since then, the parties have filed thirteen joint status reports updating the Court on the progress of related proceedings in Brazil.  In the most recent Joint Status Report, filed on January 31, 2022, the parties informed the Court:

> Intervenors and the United States agree that the Court should continue to stay this case. . . . Intervenors . . . remain committed to pursuing options to resolve the case through *transfers of interest in the property* and are actively pursuing business contacts interested in acquiring such a property interest.

(Doc. No. 55, at 2-3) (emphasis added).)

On April 4, 2022, without any prior explanation to Intervenors, the United States filed the instant Application.[1]

---

[1] Although the United States noted, in the parties' Joint Status Report dated January 31, 2022, that it "has now received a formal request for enforcement of the final order and is preparing such a request" (Doc. No. 55, 2), it did not provide Intervenors with any subsequent notice that it was filing the Application.  Nor did it provide any explanation for why the stay should be lifted, given that settlement discussions are still proceeding between Intervenors and the Government of Brazil.

# ARGUMENT

## I. The Stay Should Remain in Place to Preserve the Status Quo While Intervenors Continue Settlement Discussions with the Government of Brazil.

Since at least September 2017, the United States has consistently taken the position that these proceedings should remain stayed pending the outcome of settlement discussions between Intervenors and the Government of Brazil. (Doc. No. 40, at 2 ("Over the past year, the Intervenors and the Brazilian government have been discussing a mutually amicable disposition of the Bahia Emerald, but have not reached any final settlement. . . . *Therefore, the Intervenors and the United States request that the Court stay the case. . .*") (emphasis added).)

On September 26, 2017, the Court issued a Minute Order staying these proceedings to allow settlement discussions to proceed between Intervenors and the Government of Brazil. The Court's decision was consistent with the articulated public policy of the D.C. Circuit—that party and judicial resources should be conserved, and that settlement is highly favored. *See Autera v. Robinson*, 419 F.2d 1197, 1199 (D.C. Cir. 1969) ("Voluntary settlement of civil controversies is in high judicial favor."); *United States v. MTU Am. Inc.*, 105 F. Supp. 3d. 60, 63 (D.D.C. 2015) ("Settlement is highly favored, as not only the parties, but the general public as well, benefit from the saving of time and money that results from the voluntary settlement of litigation.") (internal quotation marks omitted).

Indeed, as recently as three months ago, on January 21, 2022, the United States maintained the position that the Court should continue to stay this case pending settlement discussions. (Doc. No. 55, at 2-3 ("*Intervenors and the United States agree that the Court should continue to stay this case. . . .* Intervenors also remain committed to pursuing options to resolve the case through transfers of interest in the property and are actively pursuing business contacts interested in acquiring such a property interest.") (emphasis added).

Without any explanation to Intervenors or the Court, the United States abruptly changed its position on April 4, 2022, moving to enforce the Forfeiture Judgment through the MLAT process. In doing so, however, the United States has put the cart before the horse. It has not moved to lift the stay of these proceedings. Nor has it attempted to articulate what good cause, if any, exists to justify lifting the stay.

Indeed, there is no justification to lift the stay at this time because settlement discussions continue between Intervenors and the Government of Brazil. The same rationale that applied for initially granting the stay—preserving the status quo, as well as party and judicial resources, while settlement discussions take place—still applies today.

The Government of Brazil, moreover, has significant incentive to settle with Intervenors. Intervenors have argued to the Brazilian courts that the Government of Brazil is legally barred under Brazilian law from seeking the forfeiture of assets purchased in good faith (*i.e.*, acquired without knowledge that the government asserts an ownership interest in the transferred asset or that the asset was somehow contraband). (*See* Doc. No. 4-3, at 5 ("[E]ven if the 'Bahia Emerald' is the product of an illegal export from Brazil, the good faith acquisition (an exception to the right to repatriate the gem) gives the property of 'Bahia Emerald' to the purchaser, according to item II of Art. 91 of Decree-Law #2,848, as of December 7, 1940 – Brazilian Criminal Code.").) This principle is likewise well-settled under U.S. law.[2]

---

[2] The "good faith purchaser" doctrine has long been recognized in federal forfeiture actions. *See generally United States v. Lawrence W. Lavinwmot Enterprises, Inc.,* 942 F.2d 177, 186 (3d Cir. 1991) ("The good-faith purchaser exception translates easily into the forfeiture context. . . . Section 853(n)(6)(B) ensures that, if indeed the defendant transfers the forfeitable property for value to a purchaser who, at the time of the purchase, is without knowledge of the government's interest in the property, the government may not later assert title superior to that of the innocent purchaser. Extension of the good-faith purchaser exception to the forfeiture context thus facilitates commerce, as it does in the general commercial law context, by removing an impediment to commercial transactions--to wit, the need for a purchaser to engage in exhaustive research, in order to discover whether there are competing claims to the property, prior to consummating a sale."); *quoting Johnson & Johnson Prods., Inc. v. Dal Int'l Trading Co.,* 798 F.2d 100, 104 (3d Cir. 1986) ("The purpose of the good faith purchaser doctrine,

Indeed, as the California Superior Court explicitly ruled following trial, Intervenors are bona fide good-faith purchasers of the Bahia Emerald. (Doc. No. 4-1, at 2, 5 (finding by California state court that FM Holdings, Inc. has "legal and equitable title to the Bahia Emerald," in part "pursuant to being bona fide good faith purchasers," and adopting its May 28, 2015, Statement of Decision)); (Doc. No. 4-4, at 5 (detailed findings by the California state court that the elements of a good faith bona fide purchaser for value "have been established for the Morrison Parties").)

The instant Application appears to be an attempt by the Government of Brazil, through the United States, to unduly influence settlement discussions with Intervenors. The Court should reject the Government of Brazil's tactic, continue to stay this action, and deny the Application. In doing so, the Court would maintain the status quo and allow settlement discussions to proceed between Intervenors and the Government of Brazil.

## II. The Application Should Be Denied Because the United States Has Failed to Protect Intervenors' Interest in the Item to be Transferred.

The United States' proposed Final Order of Forfeiture seeks, in relevant part, that (1) the Bahia Emerald "be seized and disposed of by the United States according to law"; and (2) "[a]ll persons claiming any right, title, or interest in or to the [Bahia Emerald] are held in default." (Doc. No. 56-4, at 3.) The United States, however, overlooks two critical facts.

*First*, the United States overlooks that a California court has issued a final judgment providing that Intervenors are "bona fide good faith purchasers [who] acquired legal title to the Bahia Emerald through a series of valid agency agreements," and that "*FM Holdings, Inc. has legal and equitable title to the Bahia Emerald*." (Doc. No. 4-1, at 2 (emphasis added).)

---

codified in Sections 2-403 and 2-102 of the UCC, is to promote commerce by reducing transaction costs; it allows people safely to engage in the purchase and sale of goods without conducting a costly investigation of the conduct and rights of all previous possessors in the chain of distribution.").

*Second*, the United States overlooks that Article 14 of the MLAT unambiguously provides "[t]he Central Authority of the Requested State [the United States] may require that the Requesting State [Brazil] agree to the *terms and conditions deemed to be necessary to protect third party interests in the item to be transferred* [Intervenors' interest in the Bahia Emerald]." Treaty with Brazil on Mutual Legal Assistance in Criminal Matters art. 14, Apr. 28, 1998, Treaty Doc. No. 105-42 (emphasis added).

It is indisputable that Intervenors have an interest—legal title under U.S. law—in the Bahia Emerald. (*See* Doc. No. 4-1.) Yet, nowhere does the Application or the proposed Final Order of Forfeiture make any attempt to impose any "terms and conditions . . . necessary to protect" Intervenors' interest. Instead, the United States has wholly abdicated its responsibility under the MLAT and seeks an order extinguishing Intervenors' interest and returning the gem to the Government of Brazil. This deficiency is fatal. The Court should therefore deny the Application on the merits, and continue to stay this matter pending the outcome of the Intervenors' settlement efforts.

## CONCLUSION

Intervenors respectfully request that the Court continue the stay of this action and deny the Application.

- 8 -

Dated:  April 18, 2022

Respectfully submitted,

By: /s/ Barak Cohen
Barak Cohen, Bar No. 485945
Perkins Coie LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C.  20005-3960
Telephone:  (202) 654-6337
Facsimile:  (202) 654-6211
BCohen@perkinscoie.com

T. Markus Funk, Bar No. 1004922
(admitted pro hac vice)

Andrew J. Spielberger
(admitted pro hac vice)

Andrew J. Victor, Bar No. 1022316

*Counsel for the Morrison Parties*