**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In Re: ENFORCEMENT OF A RESTRAINING ORDER BY THE NINTH FEDERAL COURT, FIFTH JUDICIAL SUBSECTION IN CAMPINAS, SP, THE FEDERATIVE REPUBLIC OF BRAZIL, TO RESTRAIN:<br><br>AN APPROXIMATELY 836-POUND EMERALD KNOWN AS THE BAHIA EMERALD LOCATED IN LOS ANGELES, CALIFORNIA | Misc. Action No. 1:15-783-RBW |

## MEMORANDUM OPINION

This case concerns a large emerald known as the Bahia Emerald (the "Emerald"), that weighs approximately 836 pounds and is the subject of a final forfeiture judgment obtained by the Federative Republic of Brazil (the "Brazilian Forfeiture Judgment") in a Brazilian court as part of the criminal prosecution of two individuals who were convicted of "smuggling, receiving stolen property[,] and fraudulent misrepresentation in violation of Brazilian law." See United States' Application to Enforce a Foreign Forfeiture Judgment Pursuant to 28 U.S.C. § 2467(c)(1) and (d)(1) Against Bahia Emerald and for Entry of an Order of Forfeiture ("Gov't Appl." or "the application") at 2, ECF No. 56. Currently pending before the Court is the United States' application to register and enforce the Brazilian court's Final Forfeiture Judgment. See id. at 1–2. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following

---

[1] In addition to the filings already identified, the Court also considered the following submissions in rendering its decision: (1) the Intervenors' Opposition to [the] United States' Application to Enforce a Foreign Forfeiture Judgment Pursuant to 28 U.S.C. § 2467(c)(1) and (d)(1) Against [the] Bahia Emerald, ("Intervenors' Opposition" or "Intervenors' Opp'n"), ECF No. 57, and (2) the United States' Reply to Intervenors' Opposition, ("Government Reply" or "Gov't Reply"), ECF No. 59.

reasons that it must vacate the stay currently imposed in this case and grant the government's application.

## I.    BACKGROUND

According to Brazilian authorities, "the Bahia Emerald is one of the largest emeralds—if not the largest emerald—ever to have been discovered."  Sixteenth Joint Status Report, Exhibit ("Ex.") 1 (Letter to the Court from the Government of Brazil ("Letter to the Court")) at 1, ECF No. 63-1.  Undoubtedly, Brazilian authorities appreciate that "the Emerald [ ] has substantial monetary value, [but] its value to Brazil cannot be quantified: it is a 'national treasure' that forms a critical part of Brazil's natural heritage and cultural patrimony."  Id., Ex. 1 (Letter to the Court) at 1 (footnote omitted).

Understanding the significance of the Emerald, on April 4, 2022, the United States (the "government") filed an application to enforce the Brazilian Forfeiture Judgment pursuant to 28 U.S.C. § 2467, seeking to return the gem to Brazil.  See Gov't Appl. at 2.  In late 2011, the United States Immigration and Customs Enforcement "informed the Brazilian Ministry of Justice that the Bahia Emerald may have been illegally taken from Brazil[,]" which led the "Brazilian authorities to open a criminal investigation."  Id., Ex. 2 (Affidavit of Brazilian Prosecutor Fernando Filgueiras de Araujo ("de Araujo Aff."))[2] ¶ 15, ECF No. 56-2.  Since then, the Emerald has been the subject of more than eight years of ongoing litigation in this Court, criminal proceedings that resulted in convictions in Brazil, and a separate civil action in California state court.

---

[2] Fernando Filgueiras de Araujo is "an [a]ttorney in the Foreign Disputes Unit of the Department of International Affairs[]" in the Brazilian Attorney General's Office.  Gov't Appl. Ex. 2 (de Araujo Aff.) ¶ 1.

A.      **The United States' Application to Enforce and Register a Foreign Restraining Order Pursuant to 28 U.S.C. § 2467**

In May 2015, a Brazilian court issued an order to restrain the Emerald pursuant to the criminal prosecution of two Brazilian residents for "knowingly receiving the stolen Bahia Emerald and illegally smuggling it into the United States[.]"  See Expedited Application of the United States to Enforce and Register Foreign Restraining Order Pursuant to 28 U.S.C. § 2467(d)(3)(A) and 18 U.S.C. § 983(j)(1)(A) ("Gov't Mot. to Enforce Restraining Order") at 1, ECF No. 1.  Brazil sought assistance from the United States to "register and enforce the [r]estraining [o]rder so that the Bahia Emerald [would] be available for forfeiture[.]"  See id. at 7.  In June 2015, in response to Brazil's request and pursuant to 28 U.S.C. § 2467 and a treaty between the United States and Brazil, the United States filed an application that was originally assigned to another member of this Court to "issue an order restraining" the Emerald.  See id. at 4–5.

When the United States filed its application for the restraining order, the Emerald was simultaneously "the subject of a pending California state court matter[,]" id. at 2, which involved "a dispute between numerous American citizens and residents about ownership over the Bahia Emerald under state law[,]" id.  The United States requested "expedited treatment of [its] application," stating that "there [was] a risk the [ ] Emerald could become [a] fugitive" because it was also the subject of "parallel California state court proceedings[.]"  Id. at 1–2.  On June 25, 2015, another member of this Court issued an order granting the United States' application and ordered that the "Los Angeles County Sheriff's Office [ ] maintain custody of the Bahia Emerald . . . until the Brazilian criminal cases are concluded[, and any forfeiture judgments obtained therein have been presented for enforcement to this Court[.]"  Restraining Order at 3, ECF No. 2.

B.       **The Morrison Parties' Intervention**

In June 2015, Kit Morrison, Todd Armstrong, Jerry Ferrara, Market Link, Inc., and FM

Holdings, Inc. (collectively, the "Morrison Parties" or "Intervenors"), filed a motion to intervene,

asserting that they had "an interest subject to the [United States'] Application and [would] suffer

substantial harm" as a result of the Brazilian court's restraining order.  See Motion and

Incorporated Memorandum of Law of Kit Morrison, Todd Armstrong, Jerry Ferrara, Market

Link, Inc., and FM Holdings, Inc. to Intervene ("Mot. to Intervene") at 1, ECF No. 4.  The

Morrison Parties asserted that, as a result of the "extended civil dispute before the Superior Court

of the State of California," id. at 2, they were the "bona fide owners" of the Emerald because

they purchased it "lawfully and in good faith[,]" id. at 5.

Although another member of this Court granted the motion to intervene, see Minute

("Min.") Order (Apr. 13, 2016), it limited the scope of intervention to "claims and defenses

permitted by 28 U.S.C. § 2467."  Public Opinion at 2, ECF No. 28 (redacted); see Sealed

Opinion at 2, ECF No. 20.  Furthermore, the Court stated that the "[California] Superior Court

made it very clear that it was not ruling on Brazil's claim to ownership of the Emerald, but only

sorting out superior title among the various U.S. claimants."  Public Opinion at 6.  Thus, the

Court declined to "adjudicate claims regarding the ownership" of the Emerald, finding that such

claims were "outside the purview of [the] [Mutual Legal Assistance in Criminal Matters Treaty

or] [('] MLAT[')] proceeding."  Id. at 8.

The Intervenors were given an initial deadline of September 9, 2016, to "file a motion for

reconsideration" if they intended to challenge the Court's order limiting the scope of their

intervention.  See Min. Order (May 25, 2016).  In response, both the government and the

Intervenors filed a joint motion for a continuance of the deadline to file a motion for

reconsideration and requested access to the Emerald for an appraisal to "promote settlement and facilitate judicial economy." See Joint Motion for a Continuance of the Deadline to File a Motion for Reconsideration and Request for Access to the Bahia Emerald for an Appraisal at 1, ECF No. 36. The Court granted the request for the continuance and granted in part and denied in part the motion for access to the Emerald. See Order at 1 (Nov. 28, 2016), ECF No. 37 (ordering that, "upon consent from the [United States] Department of Justice[,] a representative from [the] Interven[o]rs may be present during the viewing, inspection, and appraisal of the Bahia Emerald[]").

In April 2017, the Intervenors filed another unopposed motion to continue, stating that "settlement efforts have been ongoing," Unopposed Motion to Continue the Deadline to File a Motion for Reconsideration at 2, ECF No. 38, which another member of this Court granted, see Min. Order (Apr. 10, 2017). In August 2017, the Intervenors filed yet another unopposed motion to continue, stating that "[w]hile the details of [the] settlement have not been finalized, the parties remain hopeful for settlement[.]" Unopposed Motion to Continue the Deadline to File a Motion for Reconsideration at 2, ECF No. 39. The Court then issued an order in response to this motion, see Min. Order (Aug. 1, 2017), stating in part that "[the] Intervenors misperceive the nature of this action . . . [, as] [t]he question of the ownership of the Bahia Emerald is not at issue. Therefore, there is no purpose to extending any further [the] Intervenors' efforts to resolve that underlying issue[,]" id. (ordering the Intervenors to file a motion for reconsideration on or before September 15, 2017). In response to the Court's new imposed deadline, the parties submitted a joint motion to stay the case, or in the alternative, to dismiss the Intervenors' motion without prejudice. See Joint Motion to Stay the Case, or in the Alternative to Dismiss the Intervenors Without Prejudice ("Joint Mot. to Stay") at 1, ECF No. 40. Specifically, the parties

made this alternative request because the "Intervenors [were] exploring how to intervene or otherwise participate in the Brazilian proceedings[.]" Id. at 2. The Court granted the motion to stay, denied the Intervenors' motion to dismiss, and ordered the parties to submit "a joint status report every 120 days to inform the [C]ourt of the progress of the related proceedings." Min. Order (Sept. 26, 2017).

## C.    The Litigation in Brazil

In September 2017, two defendants, Elson Alves Ribeiro ("Riberio") and Rui Saraiva Filho ("Filho"), were convicted of receiving stolen property, smuggling, and fraudulent misrepresentation by the Ninth Federal Criminal Court in Campinas, Brazil, see Gov't Appl. at 4, and as a result of the conviction, the Brazilian court ordered the forfeiture of the Bahia Emerald, see id. From October 2017 to January 2020, the Brazilian defendants pursued, and ultimately exhausted, all avenues of appeal. See id. at 5. Once these defendants had exhausted all appeals and "the criminal sentence[s] became final[,]" id., "the order of forfeiture and repatriation of the [Bahia] Emerald became final[,]" id.; see id., Ex. 2 (de Araujo Aff.) ¶ 41. However, before the judgment became final, "third parties were provided notice and an opportunity to file a claim against the [ ] Emerald." Id. at 6. And, to ensure that the Morrison Parties received notice of the judgment, "the Brazilian government served the notice on January 12, 2018, on Morrison [Parties'] U.S. counsel[—at that time, Mayer Brown LLP—]after it agreed to accept service in this manner." Id.; see id., Ex. 2 (de Araujo Aff.) ¶ 34.

The Morrison Parties "filed a petition with the Federal Regional Court of the 3rd Region to obtain access and to extract copies of the case files." Id., Ex. 2 (de Araujo Aff.) ¶ 35. That court granted the request, and the Morrison Parties "took the case file out of the court, reviewed it at [their] legal counsel's office . . . and then returned it[,]" but did not ultimately move to

"participate[] in the [Brazilian] criminal proceeding[s.]" <u>Id.</u> Ex. 2 (de Araujo Aff.) ¶ 35. Instead, in October 2019, the Morrison Parties "filed a petition for a writ of mandamus in the Federal Regional Court of the 3rd Region seeking to set aside the [f]orfeiture [j]udgment." <u>Id.</u>, Ex. 2 (de Araujo Aff.) ¶ 43.  In his affidavit, Prosecutor de Araujo represents that "a petition for a writ of mandamus does not suspend or impair the judgment, order, or action at which it is directed[,]" and therefore has no impact on the final forfeiture judgment. <u>Id.</u>, Ex. 2 (de Araujo Aff.) ¶ 44; <u>see also</u> <u>id.</u> at 15 (stating that "the forfeiture [judgement] is final despite a collateral attack[]"). Prosecutor de Araujo indicated that under Brazilian law, "third parties [cannot] assert claims against assets seized in a criminal action after the conclusion of the relevant criminal proceedings (following the principle of res judicata)." <u>Id.</u>, Ex. 2 (de Araujo Aff.) ¶ 28.

## D.    Procedural Background

### 1.    The United States' Application to Enforce the Brazilian Forfeiture Judgement

The United States requests that the Court "[enforce] and [register] [ ] a September 5, 2017 Final Forfeiture Judgment issued by the Ninth Federal Criminal Court in Campinas, Brazil" and enter "a final order of forfeiture against the Bahia Emerald in favor of the United States[,]" pursuant to 28 U.S.C. § 2467(c)(1) and (d)(1).[3]  <u>Id.</u> at 2.  The United States represents that its application is based on "a formal request by the Federative Republic of Brazil made under the [MLAT] treaty[,]" and the request "has been certified by the Attorney General's designee, the Assistant Attorney General for the Criminal Division of the United States Department of

---

[3] 28 U.S.C. § 2467 authorizes United States district courts to enforce a "foreign forfeiture or confiscation judgement[,]" 28 U.S.C. § 2467 (c)(1), and "enter such orders as may be necessary to enforce the judgement[,]" <u>id</u>. § 2467 (d)(1).

Justice[.]" <u>Id.</u> at 1.[4]  Along with its application, the United States included the original Brazilian

Forfeiture Judgment, as well as a certified translation of the Forfeiture Judgment.  See <u>id.</u>, Ex. 1

("Brazil Judgment") at 1, ECF No. 56-1.  The United States represents that the Brazilian

Forfeiture Judgment became final and unappealable on January 28, 2020, after the defendants

had exhausted all appeals.  See <u>id.</u> at 2; <u>id.</u>, Ex. 1 (Brazil Judgment) at 59–61.  The application

also includes the affidavit of Brazilian Prosecutor Filgueiras de Araujo, <u>see</u> Gov't Appl., Ex. 2

(de Araujo Aff.) at 1, which sets forth "the facts and history of [the Brazilian proceedings,]" <u>id.</u>,

Ex. 2 (de Araujo Aff.) ¶ 2, and attests that there are no ongoing proceedings that could "suspend

or impair the Forfeiture Judgment, which is final and not subject to appeal[,]" <u>id.</u>, Ex. 2 (de

Araujo Aff.) ¶ 53.  The United States represents that because "the Brazilian Forfeiture Judgment

was certified by the [Brazilian] Attorney General," and because none of the exceptions in

§ 2467(d)(1) exist, the Court must grant its application.  <u>Id.</u> at 13.  The United States further

represents that if the Court grants its application, that would afford "the Attorney General of the

United States . . . the discretion to repatriate the Bahia Emerald to the Government of Brazil."

<u>Id.</u> at 16.

## 2.  The Intervenors' Opposition to the United States' Application

On April 18, 2022, the Intervenors, <u>see</u> <u>infra</u> section I.B (explaining the history of the

Morrison Parties' intervention in this action), filed a memorandum in opposition to the United

States' application, and requested that the Court "continue to stay this action and deny the

[a]pplication."  See Intervenors' Opp'n at 1.  The Intervenors provide three main arguments in

support of their position: (1) "the United States has not moved to lift the stay of these

---

[4] <u>See</u> Treaty Between the Government of the United States of America and the Government of the Federative
Republic of Brazil on Mutual Legal Assistance in Criminal Matters, Braz.-U.S., Oct. 14, 1997, S. Treaty Doc. No.
105-42 (1998) ("the MLAT" or "the Treaty").

proceedings, and, in any event, good cause does not exist to lift the stay[;]" (2) "[b]ecause settlement discussions are still ongoing" and the United States previously took the position that the case should remain stayed "pending the outcome of settlement negotiations between [the] Intervenors and the Government of Brazil[,]" "by the United States' own logic, this action should remain stayed[;]" and (3) the "California Superior Court [ ] issued a final judgment awarding legal and equitable title in the Bahia [ ] Emerald to [the] Intervenors[,]" and if the United States returns the Emerald to Brazil, it would be "abdicat[ing] its responsibility to protect third party interests in the item to be transferred." Id. at 1–2 (internal quotation marks omitted). Throughout their memorandum, the Intervenors reference the California Superior Court judgment, which concluded that the Morrison Parties were "bona fide good-faith purchasers of the Bahia Emerald[,]" id. at 6, as support for their argument that they "have an interest—legal title under U.S. law—in the Bahia Emerald[,]" id. at 7. The Intervenors further represent that "there is no justification to lift the stay . . . because settlement discussions continue between the Intervenors and the Government of Brazil[,]" id. at 5, and "as recently as three months ago[ at that time]," on January 21, 2022, the United States "maintained the position that the Court should continue to stay [this] case pending settlement discussions[,]" id. at 4.[5]

---

[5] From 2018 to 2021, the parties submitted joint status reports requesting that the "case continue to be stayed" and that the Emerald "remain in the custody of the Los Angeles County Sheriff's Department[.]" Twelfth Joint Status Report (Oct. 1, 2021) at 1, 5, ECF No. 54; see Third Joint Status Report (Oct. 10, 2018) at 5, ECF No. 45 (stating that both the Intervenors and the United States "agree that this case should remain stayed . . . pending the outcome of the Brazilian defendants' appeals and the Intervenors' efforts to demonstrate that Brazil's legal position as a matter of law and fact falls short."); Seventh Joint Status Report (Feb. 7, 2020) at 1–4, ECF No. 49 (requesting that the case "continue to be stayed and that the restraining order continue[] to remain in place[,]" and stating that "the Brazilian trial court's forfeiture order . . . is final and non-appealable," and Brazilian authorities were in the process of preparing an MLAT request package to the Department of Justice "to enforce the final and non-appealable forfeiture judgment to forfeit and then repatriate the Bahia Emerald back to Brazil").

### 3. The United States' Reply to the Intervenors' Opposition

On May 9, 2022, the United States filed its reply to the Intervenors' Opposition, stating that "none of [the Intervenors' reasons to delay entry of the forfeiture order] [are] legally sufficient to prevent enforcement[.]"  Gov't Reply at 1.  The United States further represents that: (1) it has "no obligation to agree to further stays for no reason[,]" and "the grounds on which the United States agreed with the Intervenors to stay this action have long lapsed[;]" (2) "the Brazilian government says there are no ongoing settlement discussions[;]" and (3) the Morrison Parties' reference to "Article 14 of the Treaty" is "inapplicable to the present circumstances[]" because it covers "conditions on the transfer of evidence[,]" not "conditions on the transfer of forfeited property[.]"  Id. at 1–2.

The United States represents that it previously supported the continued stay of this case so that the Intervenors could assert their claims regarding the Emerald "under Brazilian law in the Brazilian criminal proceedings and/or otherwise seek alternative resolutions with the Government of Brazil."  See id. at 2.  It further contends that "the need and justification for continuing stays of the instant action have lapsed[]" because "the Brazilian court has now entered a final forfeiture order."  Id. at 3.  To support its position that settlement discussions have ended, the government included a subsequent affidavit from Brazilian Prosecutor de Araujo to "[explain] the history of the alleged settlement discussions and confirm[] that there are no settlement discussions in progress[.]"  Id. at 3; see id., Ex. 1 (de Araujo Affidavit ("Reply Aff.")) ¶¶ 2–3, ECF No. 59-1 ("Intervenors' [o]pposition repeatedly asserts that settlement discussions are ongoing . . . [, but t]hose assertions are incorrect[,]" and "[s]ince the entry of the forfeiture order, there have been no meaningful settlement discussions[.]").  The United States also maintains that, under 28 U.S.C. § 2467, "there are limited grounds for a person to assert a property interest in property subject to forfeiture abroad to challenge such an enforcement action

filed by the United States pursuant to a treaty request[,]" and any claim to the property as a bona fide purchaser should have been "asserted in and reviewed by the Brazilian court that heard the related criminal case."  Gov't Reply at 5.

Finally, in a joint status report filed on May 30, 2023, the parties represented that there is "no dispute between the U.S. Government and the Intervenors that the criminal litigation in Brazil is over after the miners have exhausted all appeals[,]" although the Intervenors "remain committed to pursuing options to resolve the case[,]" including "a possible civil action in Brazil regarding [the p]laintiffs' rights as bona fide good[-]faith purchasers."  See Sixteenth Joint Status Report (May 30, 2023) at 2, ECF No. 63.  The joint status report included a letter to the Court from the Brazilian "National Solicitor's Office for [International] Affairs[,]" representing that Brazil "has not been engaged in—and has no wish to engage in—settlement discussions[.]"  Id., Ex. 1 (Letter to the Court) at 2.

## II.    STANDARD OF REVIEW

28 U.S.C. § 2467 "outlines a four-step process for enforcing a foreign forfeiture judgment in a U[nited ]S[tates] court."  In re One Prinz Yacht Named Eclipse, No. 12-mc-162 (RCL), 2022 WL 4119773, at *3 (D.D.C. Sept. 9, 2022).  First, "[a] foreign nation seeking to have a forfeiture . . . judgment . . . enforced by a district court . . . shall [ ] submit a request to the Attorney General or [his or her] designee[.]"  28 U.S.C. § 2467(b)(1).  Second, "the Attorney General [or his or her designee] . . . shall determine whether . . . to certify the request[.]"  Id. § 2467(b)(2).

> In making this determination, the Attorney General is required to consider, inter alia, (1) "a summary of the facts of the case and a description of the proceedings that resulted in the forfeiture or confiscation judgment;" (2) a "certified copy of the forfeiture or confiscation judgment;" and (3) "an affidavit or sworn declaration establishing that the foreign nation took steps, in accordance with the principles of due process, to give notice of the proceedings to all persons in

> sufficient time to enable such persons to defend against the charges and that the
> judgment rendered is in force and is not subject to appeal[.]"

In re $6,871,042.36, No. 14-mc-1222 (RBW), 2021 WL 1208942, at *4 (Mar. 31, 2021)

(alteration in original) (quoting § 2647(b)(1)(A)–(D)).  The Attorney General's decision to either

certify or deny the foreign nation's request "shall be final and not subject to [ ] judicial

review[.]"  28 U.S.C. § 2467(b)(2).  Third, "the United States may file an application on behalf

of a foreign nation . . . to enforce the foreign forfeiture . . . judgment . . . as if the judgement had

been entered by a court in the United States."  Id. § 2467(c)(1).

Finally, a court "shall enter such orders as may be necessary to enforce the judgment on

behalf of the foreign nation[,]" id. § 2467(d)(1), unless the court finds that "certain jurisdictional,

procedural, or substantiative defects are present," In re $6,871,042.36, 2021 WL 1208942, at *4

(citing 28 U.S.C. § 2467(d)(1)).  Under § 2467, "the court must grant the application unless one

of [ ] five narrow exceptions applies."  In re One Prinz Yacht, 2022 WL 4119773, at *4.  Those

exceptions are: (A) "the judgment was rendered under a system that provides tribunals or

procedures incompatible with the requirements of due process of law;" (B) "the foreign court

lacked personal jurisdiction over the defendant;" (C) "the foreign court lacked jurisdiction over

the subject matter;" (D) "the foreign nation did not take steps, in accordance with the principles

of due process, to give notice of the proceedings to a person with an interest in the property of

the proceedings in sufficient time to enable him or her to defend" that interest or; (E) "the

judgment was obtained by fraud."  28 U.S.C. § 2467(d)(1)(A)–(E) (footnote omitted).  In

assessing the applicability of these exceptions, a district court "shall be bound by the findings of

fact to the extent that they are stated in the foreign forfeiture or confiscation judgment."  Id.

§ 2467(e)(1).

### III.    ANALYSIS

To reiterate, currently pending before the Court is the United States' application to register and enforce the Brazilian Court's Final Forfeiture Judgment.  See Gov't Appl. at 1–2.  In its application, the United States requests that the Court enforce the Brazilian Forfeiture Judgment by "enter[ing] a final order of forfeiture in favor of the United States against the Bahia Emerald[,]" so that the United States "will have the discretion to repatriate the Bahia [ ] Emerald to the Government of Brazil."  Id. at 16–17.  As noted earlier, the Intervenors raise three main arguments as to why this Court should not enforce the Brazilian Forfeiture Judgment: (1) "the United States has not moved to lift the stay of these proceedings, and, in any event, good cause does not exist to lift the stay[;]" (2) "[b]ecause settlement discussions are still ongoing[]" and the government previously took the position that the case should remain stayed "pending the outcome of settlement negotiations[,]" "by the [government's] own logic, this action should remain stayed[;]" and (3) the "California Superior Court [ ] issued a final judgment awarding legal and equitable title in the Bahia Emerald to [the] Intervenors[,]" and if the United States returned the Emerald to Brazil, it would be "abdicat[ing] its responsibility to 'protect third party interests in the item to be transferred.'"  Intervenors' Opp'n at 1–2.

The Court will first consider whether the government's application satisfies the requirements of § 2467 and whether the stay should be lifted.  Because the Court concludes that lifting the stay is warranted, it will then address whether any of the Intervenors' arguments fall within any of the statutory exceptions of § 2467.  See 28 U.S.C. § 2467(d)(1)(A)–(E).

### A.    Whether the Requirements of § 2467 Are Satisfied

The United States requests that the Court "enforce and register the Brazilian [ ] Forfeiture Judgment and enter a final order of forfeiture in favor of the United States against the Bahia

Emerald" so that it may repatriate the Emerald to Brazil.  See Gov't Appl. at 16–17.  For the

following reasons, the Court concludes that the requirements of § 2467 have been satisfied and

thus, the Court must grant the government's application unless any of the exceptions apply.

Pursuant to § 2467, "[a] foreign nation seeking to have a forfeiture . . . judgment . . .

enforced by a district court . . . shall [ ] submit a request to the Attorney General or [his or her]

designee[,]" 28 U.S.C. § 2467(b)(1), and "the Attorney General [or his or her designee] shall

determine whether . . . to certify the request," id. § 2467(b)(2).  The decision by the Attorney

General is not subject to judicial review.  See id. § 2467(b)(2).  Thus, if the Attorney General

"decided to certify the request[,]" and "[t]he government filed an application with [the] Court to

enter an order to enforce" it, then the "Court must enforce the [Final Forfeiture Judgment] . . .

unless a specific statutory exception applies."  In re One Prinz Yacht, 2022 WL 4119773, at *4.

In other words, if "none of § 2467(d)(1)'s limitations are present[,]" and "every requirement in

§ 2467 has been satisfied," then "the Court must [ ] enforce the Brazilian Forfeiture Judgment[.]"

In re $6,871,042.36, 2021 WL 1208942, at *5–6.

Here, Brazil submitted the requisite request to the Attorney General of the United States

to enforce its Final Forfeiture Judgment.  See Gov't Appl., Ex. 2 (de Araujo Aff.) ¶ 1.  After the

Attorney General's designee, acting on behalf of the Attorney General,[6] reviewed Brazil's

request, the Attorney General's designee found that it was "in the interest of justice to certify

[Brazil's] request . . . for enforcement of [the] final forfeiture judgment issued by the Brazilian

Ninth Federal Criminal Branch of Campinas, SP to forfeit . . . the Bahia Emerald."  Id., Ex. 1

(Brazil Judgment) at 1; see 28 U.S.C. § 2467(b)(2) ("the Attorney General [or his or her

designee] shall determine whether . . . to certify the request[]").  Consistent with the statute, the

---

[6] The record reflects that the Attorney General delegated his authority to the former Assistant Attorney General for the Criminal Division, Kenneth A. Polite, Jr.  See id., Ex. 1 (Brazil Judgment) at 1.

United States "filed an application with this Court to enter an order to enforce the [Brazilian] final forfeiture [judgment,]" In re One Prinz Yacht, 2022 WL 4119773, at *4, on April 4, 2022, see Gov't Appl. at 1; 28 U.S.C. § 2467(c)(1).  Therefore, because "the statutory requirements for an entry of final forfeiture[,]" In re One Prinz Yacht, 2022 WL 4119773, at *7, are satisfied, the Court "must enforce the [Brazilian] final forfeiture [judgment and] order[] unless a specific statutory exception applies[,]" id. at *4.

**B.      Whether Any of the § 2467 Exceptions Apply**

Next, the Court assesses the applicability of any of the five exceptions of § 2467(d)(1). See 28 U.S.C. § 2467(d)(1)(A)–(E).  If any "jurisdictional, procedural, or substantiative defects are present," In re $6,871,042.36, 2021 WL 1208942, at *4 (citation omitted), then the Court "may not enter [an] order[] to enforce the judgment on behalf of the foreign nation[,]" id.  "The statutory exceptions in 28 U.S.C. § 2467(d)(1)(A)–(E) are the only factors [the] Court is required to consider in deciding whether [to] enforce" the foreign nation's final forfeiture judgment.  In re One Prinz Yacht, 2022 WL 4119773, at *5.  If a claim "does not fall within a statutory exception in 28 U.S.C. § 2467(d)(1), [the] Court [need] not consider it."  Id. (footnote omitted).

Rather than explicitly arguing that any exceptions under § 2467 apply in this case, the Intervenors make three arguments as support for their position that the Court should not enforce the Brazilian Forfeiture Judgment.  See Intervenors' Opp'n at 1.  The Court will address the Intervenors' first argument, even though it does not fall within any of the statutory exceptions defined in § 2467(d)(1)(A)–(E).  Then, the Court will address the Intervenors' third argument, as it potentially relates to § 2467(d)(1)(A).[7]  Finally, the Court will not address the Intervenors'

---

[7] Although the Intervenors do not specifically reference or cite any of the exceptions in § 2467(d)(1), the Court construes the third argument as potentially invoking the due process exception, see 28 U.S.C. § 2467(d)(1)(A),

(continued . . .)

second argument, because it "does not fall within a statutory exception in 28 U.S.C.

§ 2467(d)(1)," see One Prinz Yacht, 2022 WL 4119773, at *5.[8]  The United States argues that

"none of [the Intervenors' reasons to delay entry of the forfeiture order] [are] legally sufficient to

prevent enforcement[.]"  Gov't Reply at 1.  For the following reasons, the Court agrees with the

United States and finds that none of § 2467(d)(1)'s exceptions apply.

First, the Intervenors argue that the government "has put the cart before the horse[]"

because "[i]t has not moved to lift the stay of these proceedings[,]" and in any event, "there is no

justification to lift the stay[.]"  See Intervenors' Opp'n at 5.  However, the fact that the

government failed to move to lift the stay is immaterial.  "A trial court has broad discretion to

stay all proceedings in an action pending the resolution of independent proceedings elsewhere."

Marsh v. Johnson, 263 F. Supp. 2d 49, 52 (D.D.C. 2003) (citation omitted).  And, "[w]hen

circumstances have changed such that the [c]ourt's reasons for imposing the stay no longer exist

or are inappropriate, the [c]ourt may lift the stay sua sponte or upon motion."  Id.  Accordingly,

the "same court that imposes a stay of litigation has the inherent power and discretion to lift the

stay."  Id. (citations omitted).

Here, the Court granted the parties' joint motion to stay the case based on their

representation that staying the case would "promote settlement and facilitate judicial economy."

---

(. . . continued)
based on the Intervenors' assertions that the government and the Government of Brazil are disregarding their "third party interests" in the Emerald, see Intervenors' Opp'n at 6–7.

[8] Even if the Court considered the Intervenors' second argument—that the government's application should be denied because settlement discussions are ongoing—it would fail.  Both the United States and the government of Brazil represent there are no ongoing settlement discussions.  See Gov't Reply, Ex. 1 (Reply Aff.) at 1–2 ("[The Intervenors] repeatedly assert[] that settlement discussions are ongoing . . . [, but t]hose assertions are incorrect[] . . . [because] since the forfeiture order was entered, [de Araujo] [is] aware of only two instances where [the] Intervenors, acting through a Brazilian lawyer [ ], contacted the Brazilian government, but no substantiative settlement discussions ensued."); see also id. at 3 ("The United States joined the motion to stay [ ], and in subsequent status reports, to permit litigation or negotiations in Brazil which were granted. However, the Intervenors' 'settlement discussions' are over, and the Brazilian court has now entered a final forfeiture order.").  Accordingly, the Intervenors' second argument would have to be rejected.

See Joint Mot. to Stay at 1.  However, according to the United States, "the grounds on which [it] agreed with the Intervenors to stay this action have long lapsed."  Gov't Reply at 1. Furthermore, both the United States and the government of Brazil represent that there are no current ongoing settlement discussions.  See id. at 3; see also id., Ex. 1 (Reply Aff.) ¶¶ 2–3. Additionally, the United States has filed an application to enforce the Brazilian Forfeiture Judgment, which the Court "must grant . . . unless one of the five narrow exceptions applies."  In re One Prinz Yacht, 2022 WL 4119773, at *4.  Thus, the "circumstances have changed such that the [Court's] reasons for imposing the stay no longer exist[,]" Marsh, 263 F. Supp. 2d at 52, and, therefore, the Court will sua sponte lift the stay currently imposed in this case.

As to the Intervenors' third argument, they contend that "through the United States," Brazil "appears to be [ ] attempt[ing]" to "unduly influence[:]" (1) the settlement discussions by requesting forfeiture of the Emerald, and (2) by having the United States submit the application to enforce the Forfeiture Judgment, which is not protecting their "interest[s] in [the Emerald.]" Intervenors' Opp'n at 6.  The Court construes this argument as potentially invoking the due process exception under § 2467(d)(1)(A), which precludes a court from entering an order to enforce a foreign nation's judgment if "the judgment was rendered under a system that provides tribunals or procedures incompatible with the requirements of due process of law[.]"  28 U.S.C. § 2467(d)(1)(A).

Here, the Brazilian Forfeiture Judgment was rendered in accordance with the Brazilian Constitution, which provides that "no one shall be deprived of liberty or property without due process of law[.]"  See Gov't Appl., Ex. 2 (de Araujo Aff.) ¶ 10.  Furthermore, under the Brazilian Criminal Procedure Code, "any [party] who claims to be a bona fide third[-]party purchaser of seized property may petition the criminal judge to return the property[,]" id., Ex. 2

(de Araujo Aff.) ¶ 26, at any time before "the conclusion of the relevant criminal proceedings[,]" id., Ex. 2 (de Araujo Aff.) ¶ 29.  To ensure that the Morrison Parties, "in particular, received notice of the [Brazilian] Forfeiture Judgment, the [Brazilian Attorney General's] office arranged to serve it on the [Morrison Parties]."  Id., Ex. 2 (de Araujo Aff.) ¶ 34.[9]

      Rather than intervene in the Brazilian criminal proceedings and assert their purported rights to the Emerald as "bona fide third[-]party purchaser[s in those proceedings,]" id., Ex. 2 (de Araujo Aff.) ¶ 29, as the United States notes, the Intervenors elected instead to "file[] a petition for a writ of mandamus in the Federal Regional Court of the 3rd Region [ ] to set aside the [Brazilian] Forfeiture Judgment[,]" id., Ex. 2 (de Araujo Aff.) ¶ 43.  The Intervenors' petition was based on their perspective that the California Superior Court adjudicated them "as a bona fide purchaser, [and therefore they are] the rightful owner[s] of the Emerald."  Id., Ex. 2 (de Araujo Aff.) ¶ 46.  In a prior ruling, another member of this Court has already ruled on the effect of the California Superior Court Judgment and the undersigned has no basis to reconsider that ruling.  See Public Opinion at 6 (stating that the "[California] Superior Court made it very clear that it was not ruling on Brazil's claim to ownership of the Emerald, but only sorting out superior title among the various U.S. claimants[]").  And furthermore, under Brazilian law, the attempt "to pursue a writ of mandamus—including any potential appeal—is and has been entirely collateral to the criminal proceedings, which [have been] [ ] completed.  Accordingly, the Forfeiture Judgment is final and not subject to appeal."  Gov't Appl., Ex. 2 (de Araujo Aff.) ¶ 50. "[A]ll interested third parties, including [the Intervenors], had the right to petition the Brazilian courts overseeing the criminal proceedings to return the Emerald[, but the Intervenors] failed to exercise that right."  Id., Ex. 2 (de Araujo Aff.) ¶ 47.  Thus, instead of intervening in accordance

---

[9] There is no indication in the record that the Intervenors were not properly served, nor do they argue that the Brazilian Attorney General was unsuccessful in serving them.

with the process allowed by the Brazilian Criminal Procedure Code, the Intervenors elected to pursue an alternative process that had no effect on the Brazilian Forfeiture Judgment. Accordingly, the Court concludes that the Intervenors' rights to assert an interest in the Emerald were not, from a due process perspective, infringed or denied.  See 28 U.S.C. § 2467(d)(1)(A).

In support of their third argument, the Intervenors further argue that, under Article 14 of the MLAT, the United States has "abdicated its responsibility to protect [the Intervenors'] third party interests in [the Emerald,]" Intervenors' Opp'n at 1–2, by seeking to return the Emerald to Brazil even though the "California Superior Court [ ] issued a final judgment awarding legal and equitable title in the Bahia Emerald to [the] Intervenors[,]" id. at 2.  For several reasons this argument must be rejected.  First, the Intervenors misinterpret Article 14 of the MLAT.  As the United States accurately points out, Article 14 "creates a formal framework for handling [ ] requests" related to "one State [ ] ask[ing] another to search for, secure, and deliver articles or objects needed . . . as evidence[.]"  See S. Exec. Doc. No. 105-22, at 82 (1998)[10]; see also Gov't Reply at 7 ("Article 14 of the MLAT is intended to manage the transfer of requested evidence to a foreign treaty partner.").  Second, the Intervenors already had the opportunity to assert their third-party interests in the Emerald in the Brazilian criminal proceedings but failed to do so.  Third, and again, another member of this Court has already ruled on the effect of the California Superior Court Judgment and there is no basis to reconsider that ruling.

Having considered (1) the arguments advanced by the Intervenors in their opposition; (2) the documentation submitted with the United States' application, and (3) the documentation submitted with the United States' reply to the Intervenors' Opposition, the Court concludes that the Intervenors have failed to demonstrate that the proceedings that resulted in the Brazilian

---

[10] The United States Senate Executive Report relevant to the above referenced treaty is available on the website of the United States Congress at https://www.congress.gov/105/crpt/erpt22/CRPT-105erpt22.pdf.

Forfeiture Judgment did not comport with due process. Thus, the § 2467(d)(1)(A) due process exception does not apply in this case.

Finally, although the Court has concluded that the Intervenors' positions are insufficient to prohibit the return of the Emerald to Brazil, the Court briefly considers the applicability of the other four exceptions in § 2467(d)(1). See 28 U.S.C. § 2467(d)(1)(B)–(E). Despite the Intervenors failing to directly raise any of the exceptions prescribed by § 2467(d)(1), the Court concludes that based on the documentation submitted with the government's application, none of the exceptions apply in this case. First, the Ninth Federal Court of Campinas, SP, as well as the subsequent Brazilian appeals courts, had subject matter jurisdiction because "the crimes [involving the Bahia Emerald] were committed against the Federative Republic of Brazil." Gov't Appl., Ex. 2 (de Araujo Aff.) ¶ 17. Second, the Brazilian trial court had personal jurisdiction over the defendants in the criminal case involving the Emerald because the defendants, Riberio and Filho, "consented to the Court's personal jurisdiction." Id., Ex. 2 (de Araujo Aff.) ¶ 18. Specifically, both defendants retained legal counsel and litigated their cases before the Brazilian court and even sought appeals to overturn their convictions, which were ultimately upheld. See id., Ex. 2 (de Araujo Aff.) ¶ 18. Third, all interested parties—including the Intervenors—had notice of the Brazilian forfeiture proceedings because Brazil "took steps, in accordance with the principles of due process, to give notice of the proceedings to all persons with an interest in the Bahia Emerald in sufficient time to enable such persons to defend against the charges or to assert their rights as bona fide purchasers[.]" See id., Ex. 2 (de Araujo Aff.) ¶ 2; see also id., Ex. 2 (de Araujo Aff.) ¶ 34 (attesting that, in order to ensure the Intervenors, in particular, received notice of the Forfeiture Judgment, the Attorney General's Office "arranged to serve [notice] on the [Intervenors]. Specifically, on January 12, 2018, the

A[ttorney ]G[eneral]'s Office, acting through [the law firm of] Mayer Brown LLP, and having previously secured the [Intervenors'] consent to service via its counsel, served the [Intervenors'] counsel with the Forfeiture Judgment (including a certified translation of the Forfeiture Judgment).").  And finally, the Court having reviewed all of the documentation before it, agrees with the United States that "there is no indication [or allegation by the Intervenors] that the [Brazilian] Forfeiture Judgment was obtained by fraud."  Id. at 16.  See generally Intervenors' Opp'n.

The Court therefore concludes that none of the Intervenors' arguments are sufficient to establish that any of the § 2467(d)(1) exceptions apply.  Moreover, in their opposition, the Intervenors raised no arguments that would preclude entry and enforcement of the foreign nation's judgment under § 2467(d)(1) or preclude the Court from granting the government's application.  Accordingly, the Court concludes that every requirement in § 2467 has been satisfied, and that none of the § 2467(d)(1) exceptions apply.  The Court must therefore enforce the Brazilian Forfeiture Judgment of the Bahia Emerald.  See, e.g., In re One Prinz Yacht, 2022 WL 4119773, at *4 (concluding that under § 2467, "the [C]ourt must grant the application unless one of the five narrow exceptions applies.").

## IV.    CONCLUSION

For all of the foregoing reasons, the Court will lift the stay currently imposed in this case and grants the government's application to enforce the Brazilian Final Forfeiture Judgment to the extent that it seeks a final order of forfeiture in favor of the United States against the Bahia Emerald.

**SO ORDERED** this 21st day of November, 2024.[11]

REGGIE B. WALTON
United States District Judge

---

[11] The Court will contemporaneously issue an Order lifting the stay in this case.  Additionally, the Court will issue a final order of forfeiture pending the United States' filing of a proposed order that is consistent with this Opinion.